IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IVY JO ECKMAN;                    )
ADRIAN SANCHEZ; and               )    Civil Action
ALTHEA SANCHEZ,                   )    No. 08-cv-05454
                                  )
            Plaintiffs            )
                                  )
        vs.                       )
                                  )
LANCASTER CITY;                   )
POLICE OFFICER C. LUCIANO;        )
POLICE OFFICER JOSEPH GRAZCYK;    )
POLICE OFFICER JAMES FATTA; and   )
POLICE OFFICER DAMON GREATHOUSE,  )
                                  )
            Defendants            )


                    *    *    *


APPEARANCES:

        KEVIN C. ALLEN, ESQUIRE
                On behalf of Plaintiffs

        ROBERT G. HANNA, ESQUIRE and
        JAMES D. YOUNG, ESQUIRE
                On behalf of Defendants

                    *    *    *


                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

        The matter before the court is Defendants' Motion for

Summary Judgment Pursuant to Rule 56(c), Federal Rules of Civil

Procedure, which motion was filed October 6, 2009.[1] Plaintiffs'
Response in Opposition to Defendants' Motion for Summary Judgment
Pursuant to Rule 56(c) was filed November 17, 2009.[2] Oral
Argument was held before my former colleague, Honorable Thomas M.
Golden on January 22, 2010.[3]

This is a civil rights action brought by plaintiffs Ivy
Jo Eckman, Adrain Sanchez and Althea Sanchez against defendants
Lancaster City, C. Luciano, Joseph Grazcyk, James Fatta and Damon
Greathouse, who are police officers employed by the City of
Lancaster, Pennsylvania following the arrest of plaintiffs by
defendants in 2005.

---

[1] Defendants' motion for summary judgment was filed as Document 18.

Defendants also filed a Brief in Support of Defendants' Motion for Summary Judgment Pursuant to Rule 56(c), Federal Rules of Civil Procedure on October 6, 2009 (Document 18-2).

On the same date, defendants filed an Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment Pursuant to Rule 56(c), Federal Rules of Civil Procedure (Document 18-4).

[2] Plaintiffs' response in opposition to defendants' motion for summary judgment was filed on November 17, 2009 (Document 25).

Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56(c) was also filed on November 17, 2009 (Document 27).

On November 17, 2009, Plaintiffs' Counter Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment was filed. (Document 26).

[3] See Notes of Testimony of Oral Argument (styled "Transcript of Hearing Before The Honorable Thomas M. Golden[,] United States District Judge"), January 22, 2010 ("N.T. Oral Argument").

Oral argument was held before my former colleague, Honorable Thomas M. Golden. Subsequent to Judge Golden's untimely death, this case was reassigned to me on August 10, 2010.

Plaintiffs claim that they were falsely arrested and subject to malicious prosecution when they became embroiled in what was ultimately a civil dispute regarding the ownership of a 1992 Oldsmobile Bravada. Plaintiffs bring state and federal claims for false arrest and malicious prosecution, a federal due process claim for failure to investigate, and claims for punitive damages under Pennsylvania state law. They also seek attorneys' fees.

<u>SUMMARY OF DECISION</u>

For the following reasons, I grant summary judgment to all parties regarding all claims of plaintiffs Adrian Sanchez and Althea Sanchez. I also grant the motion for summary judgment regarding all claims of plaintiff Ivy Jo Eckman against defendants Joseph Graczyk and James Fatta, and grant summary judgment concerning plaintiff Eckman's claim against defendant Damon Greathouse for failure to investigate.

Because there are disputes concerning issues of material fact which remain regarding the existence of probable cause to arrest Ivy Jo Eckman in July 2005, I deny summary judgment concerning her claims for false arrest, malicious prosecution and punitive damages against defendant Greathouse. Because I cannot conclude as a matter of law that defendant Greathouse reasonably but mistakenly believed he had probable cause to arrest Ms. Eckman in July 2005, he is not entitled to

qualified immunity at this time.  Therefore, Ms. Eckman's case
against Sergeant Greathouse must be resolved by a jury.

Because the parties have stipulated that defendants
Lancaster City and Officer Carlos M. Luciano, Jr. should be
dismissed from this lawsuit[4], the sole remaining claims in this
case are plaintiff Ivy Jo Eckman's claims against defendant
Sergeant Damon Greathouse for false arrest (Counts I and V),
malicious prosecution (Counts IV and V), punitive damages
(Count VII) and attorneys' fees (Count VIII).

COMPLAINT

The Civil Action Complaint contains eight counts and
asserts the following claims:  a § 1983 false arrest claim on
behalf of plaintiff Eckman against the defendant-officers
(Count I); a § 1983 false arrest claim on behalf of plaintiff
Althea Sanchez against the four defendant-officers (Count II); a
failure to investigate claims on behalf of all three plaintiffs
against the four defendant-officers (Count III); claims of
malicious prosecution on behalf of all three plaintiffs against
the four defendant-officers (Count IV); pendant state law claims
of false arrest and malicious prosecution on behalf of all three
plaintiffs against the four defendant-officers (Count V); § 1983
municipal liability claims on behalf of all three plaintiffs
against defendant Lancaster City (Count VI); claims for punitive

---

[4]     See N.T. Oral Argument at page 4.

4

damages on behalf of all three plaintiffs against the four defendant-officers (Count VII); and claims for § 1988 attorneys' fees and costs on behalf of all plaintiffs against all defendants (Count VIII).

JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiffs' claims allegedly occurred in Lancaster, Pennsylvania, which is within this judicial district.

PROCEDURAL HISTORY

On October 30, 2008, a Civil Action Complaint was filed by plaintiffs in this matter in the Court of common Pleas of Lancaster County, Pennsylvania.

On November 19, 2008 defendants filed a Petition for Removal in this court (Document 1), removing this civil action from state court to federal court pursuant to 28 U.S.C. § 1446(a)-(c).

On November 25, 2008 defendants filed an answer to plaintiffs' Civil Action Complaint denying all liability and asserting various affirmative defenses, including immunity under federal and state law.

On October 6, 2009 a Stipulation of Counsel, executed by counsel for all parties, was filed (Document 17). On October 9, 2009 an Order was entered by my former colleague, Honorable Thomas M. Golden (Document 19), approving the stipulation and dismissing the following claims with prejudice:

> 1. The § 1983 claims asserted against the individual defendants (Officers Fatta, Graczyk, Greathouse and Luciano) in their official capacities as those claims merge, as a matter of law with the § 1983 claims asserted against the City of Lancaster;
>
> 2. The Fourteenth Amendment claims asserted in Counts I and II against the individual defendants and Count VI against the City of Lancaster;
>
> 3. The *Monell*[5] claims (§ 1983 municipal liability for non-constitutional policy, practice of custom) asserted against defendant, City of Lancaster in Count VI of the Civil Action Complaint;
>
> 4. Any and all claims for violation of plaintiffs' rights under the Pennsylvania Constitution; and
>
> 5. The claims for punitive damages against the four individual defendants in their official capacities asserted in Count VII of the Civil Action Complaint.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[5]     <u>See</u> *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>See also</u> *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); *Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company*, 316 F.3d 431, 443 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". In making this determination, the "evidence of the non-movant is to be believed", and all reasonable inferences from the record are drawn in favor of the non-movant. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. <u>See</u> *Watson v. Eastman Kodak Company*, 235 F.3d 851, 857-858 (3d Cir. 2000). Plaintiffs cannot avert summary judgment with speculation or by resting on the allegations in their pleadings, but rather they must present competent evidence from which a jury could reasonably find in their favor. *Ridgewood Board of Education v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999); *Woods v. Bentsen*, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS[6]

Based upon the pleadings, record papers, depositions, exhibits, defendants' statement of material facts in support of summary judgment, and plaintiffs' counter statement of material facts in opposition to summary judgment; and accepting all of plaintiffs' evidence as true and drawing all reasonable inferences from the record in favor of plaintiffs, as required by the foregoing standard of review, the pertinent facts for purposes of the motion for summary judgment are as follows.

## Events of April 25, 2005

On April 25, 2005, defendant Officer Joseph Graczyk of the Lancaster Police responded to a call from City Self Storage reporting that a car had been stolen from the storage facility's lot. (Def. 3). Officer Graczyk spoke to Jeff Covert, a City Self Storage employee, and Sandra Rosario, the purported owner of the car. (*Id.*) Mr. Covert told Officer Graczyk that the car, a

---

[6] In this section, the abbreviation "Pl." stands for plaintiffs' counter statement of material facts; "Def." stands for defendants' statement of material facts; and names in parentheses refer to the depositions of parties or witnesses and the exhibits thereto, as follows: Notes of Testimony of the Depositions of: plaintiff Ivy Jo Eckman, July 17, 2009 (Plaintiffs' Appendix Exhibit B); plaintiff Adrian Ramon Sanchez, May 8, 2009 (Plaintiffs' Appendix Exhibit C); plaintiff Althea Yolanda Sanchez, July 17, 2009 (Plaintiffs' Appendix Exhibit D); witness Kornelia Rita Sanchez, August 14, 2009 (Plaintiffs' Appendix Exhibit E); defendant Officer Carlos M. Luciano, Jr., May 29, 2009 (Plaintiffs' Appendix Exhibit I and Defendants' Appendix Exhibit D); defendant Officer Joseph Graczyk, May 29, 2009 (Plaintiffs' Appendix Exhibit G and Defendants' Appendix Exhibit C); defendant Detective James V. Fatta, May 29, 2009 (Plaintiffs' Appendix Exhibit A and Defendants' Appendix Exhibit B); and defendant Sergeant Damon Greathouse, May 29, 2009 (Plaintiffs' Appendix Exhibit F and Defendants' Appendix Exhibit A).

1992 Oldsmobile Bravada, had once belonged to plaintiff Ivy Jo Eckman, who rented storage space at City Self Storage. (Def. 4).

Mr. Covert showed Officer Graczyk paperwork indicating that City Self Storage had sold Ms. Eckman's car at auction in February 2005 because she failed to pay rent on the space in which the vehicle was stored. (Def. 5). The auction violated Pennsylvania law concerning the sale of vehicles in storage, because it took place less than 15 days after the publication of the first advertisement of the sale in local newspapers (Pl. 66), and because the advertisement failed to describe the car adequately.

Officer Graczyk also spoke with Philomena Sanchez, Ivy Jo Eckman's prospective sister-in-law, who had contacted the Lancaster County Dispatcher's office. (Def. 6; Pl. 71). Philomena Sanchez told the Officer that she and Ms. Eckman had gone to City Self Storage upon learning that Ms. Eckman's car had been auctioned. (Def. 6).

Ms. Eckman's fiancee, Patrick Sanchez, had gone to City Self Storage earlier in April to pay off the past-due rent amount, and began to suspect that the storage facility had improperly sold Ms. Eckman's car (Pl. 6). When Ms. Eckman discussed the situation with Mr. Covert at City Self Storage, Mr. Covert agreed that the vehicle had been sold, but said that he would try to get it back. (Pl. 6).

Ms. Eckman did not receive notices from City Self Storage regarding its intent to auction the vehicle. (Pl. 7). However, Mr. Covert gave Ms. Eckman permission to remove the vehicle from City Self Storage. (Pl. 9).

During their discussion on April 25, 2005, Philomena Sanchez also told Officer Graczyk that her brother, plaintiff Adrian Sanchez, had driven the car off of the City Self Storage lot. (Def. 6). When Adrian Sanchez drove the car away from City Self Storage, he believed that Ms. Eckman was the owner of the vehicle. (Pl. 8, 9). He left the car at Philomena Sanchez's house. (Pl. 9). Ms. Eckman later moved the car to an undisclosed location in Lancaster County. (Eckman Dep. 76).

Officer Graczyk ran the license plate and vehicle identification number ("VIN") of the car through the database of the Pennsylvania Department of Transportation ("PennDOT") and learned that the car was registered to Sandra Rosario. (Def. 10). At the time, Officer Graczyk did not know the law regarding the proper sale of vehicles by storage facilities. (Pl. 70). After consulting with defendant Sergeant Damon Greathouse, who believed that there was enough probable cause to charge Adrian Sanchez, Officer Graczyk prepared a criminal complaint against

Adrian Sanchez charging him with Theft by unlawful taking or

disposition.[7]  (Def. 7, 11).

The affidavit of probable cause included the following

information:

> 1.  Officer Officer Graczyk responded to a
> call regarding an auto theft at City Self Storage.
> He spoke to Sandra Rosario and Jeff Covert, who
> reported that an unidentified white or Hispanic
> man had driven off with the vehicle.  Ms. Rosario
> produced paperwork showing that she had purchased
> the vehicle from City Self Storage.  Mr. Covert
> noted that the car had been seized by City Self
> Storage because the previous owner, Ivy Jo Eckman,
> had failed to pay storage fees.  Mr. Covert
> produced paperwork that showed that the car had
> been "legally" sold at auction.  Officer Graczyk
> checked the VIN with PennDOT, and found that the
> car was indeed registered to Ms. Rosario.

> 2.  Mr. Covert reported that earlier that
> day, Ivy Jo Eckman and Philomena Sanchez had come
> to City Self Storage to dispute the validity of
> the auction of the Oldsmobile.  Shortly
> thereafter, Mr. Covert saw an unidentified man
> drive off in the car.

> 3.  Officer Graczyk noted that Philomena
> Sanchez had called the police to report that the
> car had been improperly sold at auction.  Officer
> Graczyk called Philomena Sanchez, and asked who
> had driven the car away from City Self Storage.
> Philomena Sanchez identified her brother, Adrian
> Sanchez, as the driver.

Events Between April 25, 2005 and May 7, 2005

After reclaiming the car from City Self Storage with

the help of plaintiff Adrian Sanchez, plaintiff Ivy Jo Eckman

---

[7]    Under Pennsylvania law, a person is guilty of theft if he
unlawfully takes, or exercises unlawful control over, movable property of
another with intent to deprive him thereof.  18 Pa.C.S.A. § 3921(a).

paid off the balance on her auto loan with Transouth/
Citifinancial. (Pl. 10). She received a copy of the title on
May 2, 2005. (Greathouse Dep. Exh. 4).

She also retained an attorney, Samuel Mecum, Esquire,
who prepared a letter to City Self Storage on her behalf
regarding her title to the car. (Pl. 10). The letter advised
the storage company of flaws with the auction of the car, and
recommended that the storage company resolve the matter by
persuading Ms. Rosario to title the car back to Ivy Jo Eckman.
(Greathouse Dep. Exh. 3).

At some point, Philomena Sanchez visited the police
station and presented defendant Sergeant Damon Greathouse with a
copy of the title. (Greathouse Dep. 15).[8]

A District Justice reviewed Officer Graczyk's affidavit
of probable cause and criminal complaint and issued a warrant for
the arrest of Adrian Sanchez on May 4, 2005. (Def. 12). Prior
to the service of the warrant, Sergeant Greathouse had been in
touch with Adrian Sanchez by telephone. (Def. 19). Sergeant
Greathouse alleges that he explained to Adrian Sanchez that the
car was registered to Sandra Rosario, who had purchased it at
auction. (*Id.*)

---

[8]    It is unclear precisely when this exchange took place. Because I
am required to view the evidence and inferences in the light most favorable to
the plaintiffs, I will assume that Sergeant Greathouse saw the title before
making any arrests.

Sergeant Greathouse contends that he explained to Adrian Sanchez that "he could not just take the car off of a lot which belonged to another individual." (*Id.*) Adrian Sanchez discussed with Sergeant Greathouse whether the car had been legally sold by City Self Storage, and offered to assist the police if they established that the car was not, in fact, owned by Ms. Eckman. (Pl. 11).

Prior to his arrest, Adrian Sanchez took the following steps to investigate the case on his own: contacting an attorney for PennDOT; obtaining a copy of the auction notice used by City Self Storage; and procuring a copy of PennDOT guidelines regarding the sale of vehicles by storage facilities. (Pl. 12). A PennDOT attorney advised Adrian Sanchez that, because of the lien on the vehicle, Sandra Rosario should not have been issued a new title to the car. (*Id.*)

Sergeant Greathouse also continued his investigation during this time, receiving information from other sources about the car, its title, and its sale by the storage company. He received a copy of Attorney Mecum's letter to City Self Storage, which asserted that the sale of the car to Sandra Rosario was improper. (Pl. 50).

Sergeant Greathouse also interviewed Jeff Covert of City Self Storage in connection with the case against Ivy Jo Eckman. (Def. 29). Mr. Covert showed Sergeant Greathouse a copy

of Ms. Eckman's lease at the storage facility, a ledger documenting her rental payments, and documents relating to attempts to collect Ms. Eckman's past due rent.  (*Id.*)[9]

Defendant Detective James Fatta assisted with this investigation, accompanying Sergeant Greathouse to City Self Storage when Sergeant Greathouse went to collect documents. (Def. 45).  Detective Fatta maintains that he was not aware of any discussions between Adrian Sanchez and Sergeant Greathouse prior to service of the arrest warrant for Adrian Sanchez on May 7, 2005.  (Def. 47).

Detective Fatta was aware that there is a procedure in place for the proper sale of vehicles by storage companies, but he did not check the procedure in this case, and instead assumed that Sergeant Greathouse had checked it.  (Pl. 64).  Detective Fatta did not look at the documentation in this case in detail, although the storage facility forwarded him copies of the published notice of the sale by facsimile transmission ("fax"). (Pl. 64, 65).

The May 7, 2005 Arrests of Adrian Sanchez and Althea Sanchez

On May 7, 2005, defendants Sergeant Damon Greathouse and Detective James Fatta drove to the home of plaintiff Ivy Jo

---

[9]     It is unclear from the record exactly when Sergeant Greathouse received this information.  For purposes of evaluating the motion for summary judgment, I must consider the facts in the light most favorable to the plaintiffs and assume that the police possessed this information prior to the May 7, 2005 arrest of Adrian Sanchez.

Eckman and her fiancee, Patrick Sanchez, to interview Ms. Eckman. (Greathouse Dep. Exh. 16). Although Ms. Eckman was not home, Defendants did interview Patrick Sanchez, who stated that he and plaintiff Adrian Sanchez had been in touch with PennDOT regarding the car. (*Id.*) Patrick Sanchez provided the officers with "copies from PennDOT" and a "Western Union receipt for payment of the car." (*Id.*)

Detectives Greathouse and Fatta then went to the home of Adrian Sanchez to serve the warrant for Adrian's arrest. (Def. 21). When police arrived at the Sanchez home, Adrian Sanchez's wife Kornelia answered the door. (Def. 22). The Sanchez home has a vestibule with two doors (one at each end of the vestibule). (*Id.*) When Sergeant Greathouse informed Kornelia Sanchez that he was there to execute an arrest warrant for her husband and that police would enter the house to search for Adrian, she closed the exterior door to her home. (Def. 23).

Mrs. Sanchez believed that her husband had gone to visit his father. (Pl. 18). Mrs. Sanchez also believed that the officers needed a search warrant to enter her home. (Def. 23). She was unable to let the officers into her home, because a locking mechanism on the interior door had been activated without her knowledge. (Pl. 21). Mrs. Sanchez was eventually charged with, and convicted of, hindering apprehension and obstruction of law. (Def. 24).

Plaintiff Althea Sanchez, plaintiff Adrian Sanchez's teenage daughter, eventually came to the door. (Def. 25). Althea Sanchez was in the shower when the events between her mother Kornelia Sanchez and the police officers unfolded, and she appeared at the door clad in a towel. (Pl. 23).

Defendants claim that Sergeant Greathouse showed Althea a copy of the arrest warrant for her father Adrian Sanchez and explained to her the difference between an arrest warrant and a search warrant when she protested that officers needed a search warrant to enter her home. (Def. 25). Althea's request to see a warrant was denied. (Pl. 25).

Defendants claim that Althea Sanchez was "defiant" and refused to open the door. (Def. 28). However, Althea was willing to open the door, but first went upstairs to put on some clothes. (Pl. 24-25 ).

The parties agree that police entered the Sanchez home by force. The police damaged the door to the Sanchez home. (Def. 26; Pl. 24-26).

Once police were inside the home, Officer Hershiser, who is not a party to this case, arrested Althea Sanchez for hindering apprehension and obstruction of justice. (Def. 27). Adrian Sanchez, who had been in the house and was asleep when police arrived, was also arrested. (Pl. 29). The criminal charges against Althea were eventually withdrawn, as

officers reasoned that Althea was a young woman "stuck in the
middle of the situation."  (Def. 50).

Once in custody, Adrian Sanchez gave a statement to
police in which he explained his belief that Ivy Jo Eckman was
the owner of the car.  (Greathouse Dep. Exh. 7).  Sergeant
Greathouse also communicated with Perry Mascarenas, an employee
of Citifinancial, and learned that the lender had never been
notified by City Self Storage regarding any lien or request for
abandonment of Ivy Jo Eckman's car.  (Greathouse Dep. 35).

### The May 17, 2005 Arrest of Ivy Jo Eckman

On May 13, 2005, defendant Sergeant Damon Greathouse
prepared an affidavit of probable cause charging plaintiff Ivy Jo
Eckman with the offense of Receiving stolen property.[10]
(Pl. 37).  The affidavit indicated the following:

> • Defendant Officer Joseph Graczyk responded to
>   a stolen vehicle complaint at City Self
>   Storage on April 25, 2005.  The vehicle's
>   previous owner had "forfeited rights and
>   ownership of the vehicle" by failing to pay
>   storage fees.  The vehicle was sold to Sandra
>   Rosario at auction, and the car was titled in
>   Ms. Rosario's name and insured.

---

[10]    Receiving stolen property is defined under Pennsylvania law as
follows: "A person is guilty of theft if he intentionally receives, retains,
or disposes of movable property of another knowing that it has been stolen, or
believing that it has probably been stolen, unless the property is received,
retained, or disposed with intent to restore it to the owner."
18 Pa.C.S.A. § 3925(a).

- Plaintiff Adrian Sanchez was arrested for theft on May 7, 2005 and advised of his *Miranda*[11] rights. He stated that "he drove the vehicle off of the parking lot for def[endant], who was present at time of theft."

- Eckman "has been contacted through third parties" and been advised to remit the car to police. She has failed to comply and "give the car back to the victim." (Greathouse Dep. Exh. 15).

Ms. Eckman was arrested on May 17, 2005. (Pl. 37). Defendant Detective James Fatta interviewed her. (Fatta Dep. Exh. 3). Ms. Eckman refused to say where she had hidden the Oldsmobile Bravada, "until I go through the legal thing and find who's the car is." (*Id.*). Her lawyer, Samuel Mecum, had advised her to hide her car initially. (*Id.*) She did not receive either registered mail advising her that the car was to be auctioned, or the small check which City Self Storage sent to her representing the difference between the balance she owed on her rent and the amount received at auction for her car. (*Id.*)

Ms. Eckman also spoke to Sergeant Greathouse while she was in jail, and explained to him that Mr. Covert had given her permission to remove the car from City Self Storage. (Pl. 60). At some point following the arrest of Ms. Eckman, Sergeant Greathouse completed a timeline for events in this case.

---

[11] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d. 694 (1966).

18

(Greathouse Dep. Exh. 4).  In the timeline, Sergeant Greathouse recounted that Arcadia Financial Recovery faxed a title to the car to Ms. Eckman on May 2, 2005.  (*Id.*)  On the same day, however, Ms. Eckman received a letter from PennDOT confirming that the car had been titled to Ms. Rosario on March 9, 2005. (*Id.*)

Subsequent Events and the Second Arrest

Defendant Sergeant Damon Greathouse maintained contact by e-mail with Citifinancial, the lender which financed plaintiff Ivy Jo Eckman's purchase of the car.  (Greathouse Dep. Exh. 6). By May 20, 2005, he was aware that Ms. Eckman had settled her account with the bank, and that the bank had remitted the title to Ms. Eckman.  (*Id.*)

Ms. Eckman's preliminary hearing was scheduled to take place on July 29, 2005.  (Def. 32).  At that time, the car was still stored in a location which Ms. Eckman would not disclose to police.  (*Id.*)  Ms. Eckman worked out an agreement with authorities in which the charges against her would be dropped if she agreed to tell police where the disputed car was being stored.  (*Id.*)  Ms. Eckman did not follow through on the agreement because she had understood that the charges against all members of the Sanchez family also would be dropped.  (Pl. 40).

Sergeant Greathouse called the Lancaster County District Attorney's office and received permission from Assistant

19

District Attorney Chris Larsen to again charge Ms. Eckman with theft. (Def. 34). When renewing the charges, Sergeant Greathouse did not advise the District Attorney that there were potential defects in the storage company's auction of the vehicle. (Greathouse Dep. 63-64).

The charges of theft against plaintiffs Adrian Sanchez and Ivy Jo Eckman were dismissed on the day of the scheduled trial, "due to the nature of the matter being civil and not criminal." (Pl. 34). Ms. Eckman spent four days in jail following her May 17, 2005 arrest. (Pl. 37). Following her July arrest, Ms. Eckman spent an additional three days in jail. (Pl. 40).

<u>DISCUSSION</u>

<u>Claims of Althea Sanchez</u>

In the Civil Action Complaint, plaintiff Althea Sanchez brings federal Section 1983 claims for false arrest (Count II) and malicious prosecution (Count IV) in violation of the Fourth and Fourteenth Amendments, failure to investigate (Count III), and related pendant Pennsylvania state-law claims (Counts V and VII). The motion for summary judgment of all defendants regarding these claims are granted and Ms. Sanchez's claims are dismissed because the officer who arrested her for obstruction and hindering apprehension is not a party to this case.

An official can only be liable for violations of civil rights in which he personally participated.  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007).  More specifically, to prevail in a claim for malicious prosecution, a plaintiff must show that a defendant initiated a criminal proceeding, *Collins v. Christie*, 337 Fed. Appx. 188, 194 (3d Cir. 2009).  To prevail on a false arrest claim, a plaintiff must show that police made an arrest without probable cause.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

Althea Sanchez's claims fail because it was a non-party, Officer Hershiser, not a defendant in this action, who arrested her and initiated criminal proceedings against her.  Plaintiffs have produced no evidence that the responsibility for Althea's arrest or any related investigation was directed by, or could be attributed to, any of the named defendants.

Defendant Officer Joseph Graczyk was not present when Althea Sanchez was arrested.  Defendant Detective James Fatta and defendant Sergeant Damon Greathouse were at the scene when the arrest occurred, but there is no evidence in the record, particularly in the parties' depositions, that these officers

played an affirmative part in Althea's arrest or in initiating the criminal proceedings against her.[12]

Plaintiffs argue that defendants Graczyk, Fatta and Greathouse caused Althea's arrest by serving an arrest warrant on plaintiff Adrian Sanchez, and in the process forcibly entered the Sanchez home.  (Pl.'s Brief 6-7).  A government actor can be held liable for the "natural consequences of his actions," and a police officer can therefore be liable for an arrest which he authorized or set in motion, but did not carry out.  *Berg v. County of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986)).

In this case, however, Althea Sanchez's arrest cannot be considered the "natural consequence" of the issuance of the warrant for Adrian Sanchez.  Officer Graczyk, who sought the warrant for Adrian, and Detective Fatta and Sergeant Greathouse, who set out to serve the warrant, did not authorize or inevitably

---

[12]    In oral argument before Judge Golden, plaintiffs argued before the Court that Detective Fatta was "giving direction" at the time of Althea Sanchez's arrest.  (N.T. Oral Argument at page 40).  Althea's own testimony, however, indicates that while Detective Fatta told her to "stand back" so that police could break down the door, it was actually a uniformed officer who arrested her.  (Althea Dep., 38-41; 50).

She reported having no other discussions with any officers at the scene following her arrest, (Althea Dep. 50), and there is nothing in her testimony that would suggest that Detective Fatta or Sergeant Greathouse directed her arrest in some way.

Kornelia Sanchez testified that she did not witness the arrest of her daughter, as she had herself been placed under arrest and was sitting in a police cruiser when Althea's arrest occurred.  (Kornelia Dep. 71).  Nothing in the depositions of either Detective suggests that they directed or influenced Althea's arrest.

set in motion Althea Sanchez's arrest by pursuing the case against Adrian Sanchez.

In the *Berg* case cited by Plaintiffs, a plaintiff was arrested pursuant to a faulty warrant when a clerk's typographical error led to the issuance of a warrant for Mr. Berg, rather than Mr. Banks. *Id.* at 266-267. The United States Court of Appeals for the Third Circuit granted summary judgment in favor of the defendant officer who made the original request for the warrant for Mr. Banks because he never intended to cause the arrest of Mr. Berg and played no part in the issuance or service of the defective warrant. *Id.* at 275.

A similar rationale applies in this case. Like Mr. Berg's arrest, Althea Sanchez's arrest was the wholly unpredictable result of the service of the warrant on Adrian Sanchez, and was neither carried out nor authorized by defendants Graczyk, Fatta, or Greathouse. Accordingly, I grant defendants' motion for summary judgment and dismiss all federal and related state claims of Althea Sanchez against them for false arrest, malicious prosecution and failure to investigate.

<u>Section 1983 claims for False Arrest</u>[13]

The gravamen of plaintiff Ivy Jo Eckman's and plaintiff Adrian Sanchez's claims are that officers knew or should have known that plaintiffs could not have committed the crimes of theft or receiving stolen property because they were never in possession of the property "of another."  According to plaintiffs, at some point defendant officers should have understood that Ivy Jo Eckman was involved in a civil dispute over ownership of the car, and that her claim to the car was as worthy of protection as Sandra Rosario's claim.

The Fourth Amendment to United States Constitution protects individuals from arrest in the absence of probable cause.  Plaintiffs bring this civil rights action, and pendent state law claims, on the grounds that Lancaster police employed by defendant Lancaster City violated their Fourth Amendment rights by arresting them without probable cause.  Probable cause exists where a prudent officer would believe, based on the facts and circumstances at hand, that a suspect had committed or was committing an offense.  *Sharrar v. Felsing*, 128 F.3d 810, 817-818 (3d Cir. 1997).

---

[13]     The elements of federal and state law claims for false arrests are co-extensive, *Russoli v. Salisbury Township,* 126 F.Supp. 2d 821, 869 (E.D.Pa. 2000)(VanAntwerpen, J.).  Thus, when the Court dismisses or retains a federal claim for false arrest, it takes the same action regarding Plaintiff's related state law claims.

In assessing probable cause, police officers are permitted to weigh evidence and make credibility determinations, even if those decisions later prove incorrect. *Wright v. City of Philadelphia*, 409 F.3d 595, 603 (3d Cir. 2005). The constitutional validity of an arrest does not depend on the ultimate conviction of the accused. *Id.* at 602. Instead, "the facts must support a reasonable belief that there is a fair probability that the person committed the crime at issue." *Copeland v. Reading Police Department*, 2008 U.S.Dist.LEXIS 63957, at *15 (E.D.Pa. Aug. 21, 2008).

Police have probable cause when "criminality is one reasonable inference; it need not be the only, or even the most likely, inference...." *Commonwealth v. Smith*, 979 A.2d 913, 917 (Pa. Super. Ct. 2009) (quoting *Commonwealth v. El*, 933 A.2d 657, 661 (Pa. Super. Ct. 2007)). The existence of probable cause is usually a question for a jury. The Court may conclude, however, that probable cause existed as a matter of law if the evidence, viewed in the light most favorable to plaintiff, would not support another factual finding. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

To succeed in a Section 1983 action for false arrest in which a warrant was issued, plaintiff must show that a police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions which create a

falsehood in applying for a warrant; and that the statements or omissions are material or necessary to the finding of probable cause. 42 U.S.C. § 1983; *Porter v. Gray*, 2007 U.S. Dist.LEXIS 10143, at *16-17 (W.D. Pa. Feb. 13, 2007)(citing *Wilson v. Russo*, 212 F.3d 781, 786-787 (3d Cir. 2000)).

The Third Circuit has stated that the Fourth Amendment requires the evaluation of facts by a neutral magistrate precisely because "an uninterested party is presumably better suited to review and evaluate the facts than an officer pursing a lead." *Wilson*, 212 F.3d at 787. Thus, a police officer has a duty to submit a truthful and accurate affidavit of probable cause.

A police officer acts with reckless disregard for the truth when he withholds information from a warrant that a reasonable person would recognize as "the kind of thing the judge would wish to know." *Id.* at 788 (internal citations omitted). Regarding false statements, an officer acts with reckless disregard for the truth when "viewing all the evidence , [he] must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 788.

Whether an officer acted with reckless disregard for the truth is a question of fact for a jury. *Id.* at 788. To determine whether a falsehood or omission in an affidavit is

material to a finding of probable cause, the Court must excise false statements and consider the affidavit together with the omitted material, and determine whether a "corrected" affidavit would establish probable cause. *Porter*, 2007 U.S.Dist.LEXIS 10143, at *18.

Summary judgement in favor of a police officer is appropriate if, even after a flawed affidavit is corrected, the officer still would have had probable cause to arrest plaintiff. *Id.* at *46. The Court must weigh the inculpatory evidence against the exculpatory evidence in a corrected affidavit of probable cause. *Cummings v. City of Philadelphia*, 137 Fed. Appx. 504, 506 (3d Cir. 2005). Exculpatory evidence does not eliminate probable cause simply because it might prove useful to a jury weighing reasonable doubt. *Steele v. City of Erie*, 113 Fed. Appx. 456, 459 (3d Cir. 2004).

<u>Claim of Adrian Sanchez for False Arrest</u>

As noted above, plaintiff Adrian Sanchez was charged with theft by unlawful taking, defined as "tak[ing], or exercis[ing] unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). Defendant Officer Joseph Graczyk's affidavit of probable cause noted that Sandra Rosario purported to be the owner of the 1992 Oldsmobile; that Officer Graczyk confirmed with PennDOT that the car was registered to Sandra Rosario; and that Philomena Sanchez

27

identified the man who drove the car away from City Self Storage as plaintiff Adrian Sanchez.  This information establishes probable cause that Adrian Sanchez took Sandra Rosario's car with intent to deprive her of the car.

The critical question in Adrian Sanchez's false arrest case, therefore, is whether the affidavit of probable cause prepared by Officer Graczyk contained any material falsehoods or omissions.  I conclude that Officer Graczyk included all pertinent information available to him on April 25, 2005 in his affidavit.  Most importantly, his affidavit included the information that plaintiff Ivy Jo Eckman disputed the validity of the auction of the car by City Self Storage and that Philomena Sanchez had contacted the police independently to report that the improper sale had taken place.

A neutral magistrate was therefore alerted about the civil dispute over the car, and the Sanchez family and Eckman belief that Ivy Jo Eckman was still the rightful owner of the car.  The magistrate apparently did not find that this information negated probable cause.  By including this information for the magistrate judge's consideration, however, Officer Graczyk fulfilled his constitutional obligations.

Even if I assume, *arguendo*, that the police should have updated the affidavit of probable cause to reflect all of the details available to police officers by May 7, 2005, probable

cause for Adrian Sanchez's arrest would still have existed. Corrected to include all information available to police (viewing the facts in this case in the light most favorable to plaintiffs), the affidavit of probable cause would include the following:

1.  Officer Joseph Graczyk responded to a call regarding an auto theft. He spoke to Sandra Rosario and Jeff Covert, who reported that an unidentified white or hispanic man had driven off with the vehicle. Ms. Rosario produced paperwork showing that she had purchased the vehicle from City Self Storage. Officer Graczyk checked the VIN with PennDOT, and found that the car was indeed registered to Rosario.

2.  Mr. Covert reported that earlier that day, Ivy Jo Eckman and Philomena Sanchez had come to City Self Storage to dispute the validity of the auction of the Oldsmobile. Shortly thereafter, Mr. Covert saw an unidentified man drive off in the car.

3.  Officer Graczyk noted that another call to the station had come from Philomena Sanchez, who had called the police to report that the car had been improperly sold at auction. Officer Graczyk called Philomena Sanchez, and asked who had driven the car away from City Self Storage. Philomena Sanchez identified her brother, Adrian Sanchez, as the driver.

4.  Sergeant Damon Greathouse and Adrian Sanchez spoke on a number of occasions. Mr. Sanchez maintains that the car was improperly sold at auction, and that he was not aware when he drove the car away that it had been titled to Sandra Rosario. Mr. Sanchez has contacted PennDOT, and reports that staff members there agree that the auction was defective.

5.  The auction of the car appears to have been defective under PennDOT regulations, because advertisements for the auction did not describe

the vehicle and were too close in time to the sale.

      6.  Patrick Sanchez produced a Western Union receipt confirming that Ivy Jo Eckman made a substantial payment on the car between April 25, 2005 and May 7, 2005.

      7.  Philomena Sanchez had shown police a copy of a title listing Ivy Eckman as the owner of the car, and Transouth Financial as the lienholder.

Although useful to a jury working under the reasonable doubt standard, the fact that the auction of the car was improper and Adrian Sanchez's belief that he was helping his sister-in-law recover her own car do not negate probable cause. Defects in the auction notwithstanding, the police could still draw a reasonable inference, based on the information they obtained from the PennDOT VIN check, that the car belonged to Sandra Rosario. Police could reasonably consider the PennDOT title history, which showed Ms. Rosario as the owner of the car, and weigh it more heavily than the older title provided to them by Philomena Sanchez.

The police theory of this case would not be undermined by Ivy Jo Eckman's payment to her creditors by Western Union. Regardless of who actually owned the car as of May 7, 2005, Ms. Eckman was still responsible for the balance of the loan. Moreover, the police did not violate Adrian Sanchez's rights by choosing to credit Ms. Rosario's explanation of events over his own.

Although criminality is not the only inference which could be drawn from the facts presented in the edited affidavit, it would still be a reasonable inference.  Therefore, probable cause exists even under the edited affidavit, and any omissions from the affidavit are immaterial.  Because there was probable cause to arrest Adrian Sanchez, his claims for false arrest and malicious prosecution fail as a matter of law.

### Claim of Adrian Sanchez for Failure to Investigate Claim

Plaintiffs note that, although defendant Officer Joseph Graczyk completed the affidavit of probable cause and criminal complaint for plaintiff Adrian Sanchez on April 25, 2005, the warrant was not actually issued by a judge until May 4, 2005, and not served until May 7, 2005.  They thus argue that Officer Graczyk and defendant Detective James Fatta and Sergeant Damon Greathouse, who took over the investigation, had a duty to investigate the exculpatory evidence in this case.  They emphasize that Adrian Sanchez conducted a minimal investigation into the auction by City Self Storage and found that it was deficient.  Plaintiffs urge the court to conclude that the officers violated their civil rights by not conducting a similar investigation.

Once a police officer has established probable cause, the Constitution does not require that he continue to investigate to uncover potentially exculpatory evidence.  *Patterson v. School*

*District of Philadelphia*, 2000 U.S. Dist. LEXIS 10245, at *19
(E.D.Pa. July 25, 2000)(Newcomer, S.J.).  To bring a successful
due process claim for failure to investigate, a plaintiff must
show that a police officer acted intentionally or recklessly, in
a manner that shocks the conscience, in failing to investigate.
*Martin v. Anderson*, 2008 U.S. Dist.LEXIS 87912, at *29 n.8
(E.D.Pa. Oct. 30, 2008)(Rice, M.J.).

A negligent failure to investigate does not create
liability.  *Id.*  Failure to investigate is considered in tandem
with the strength or weakness of the probable cause evidence.
Where probable cause evidence is weak, officers may have a
greater duty to consider potential exculpatory evidence.
*Walker v. Spiller*, 1998 U.S.Dist.LEXIS 8428, at *19 (E.D.Pa.
June 9, 1998)(Brody, J.).

In this case, I find that no reasonable jury could
conclude that defendants through their conduct of the
investigation acted in a manner which shocked the conscience.  As
an initial matter, the police did not fail to investigate the
available exculpatory evidence.  As of April 25, 2005, the
officers had confirmation that the car was registered to Sandra
Rosario, and identification of Adrian Sanchez as the man who
drove the car away from City Self Storage.

Although this evidence provided probable cause, the
officers, nevertheless, continued their investigation.  Between

April 25 and May 7, 2005, the officers conducted interviews with City Self Storage staff and reviewed plaintiff Ivy Jo Eckman's storage lease and the advertisements for the disputed auction. In addition, Sergeant Greathouse had an on-going dialogue with Adrian Sanchez in which Mr. Sanchez provided his theory of the case.

For purposes of this motion, I must assume that the police also received and reviewed the PennDOT fact sheet on proper auctioning procedures prior to May 7, 2005. All of these activities were aimed at exploring exculpatory evidence. The fact that officers did not draw the conclusions from this evidence which plaintiffs desired, does not mean that they failed to conduct an investigation.

Plaintiffs argue that evidence that the auction of Ivy Jo Eckman's car did not meet PennDOT regulations shocked the conscience because of the failure of the police to integrate this exculpatory information into their thinking about the case. Even assuming that police officers were aware of defects in the auction, this did not require them to conclude that the car still belonged to Ivy Jo Eckman.

The PennDOT fact sheet does not suggest that the car title reverts to the original owner in the event of a defective

auction.[14]  Having reviewed the PennDOT fact sheet, the police

could rationally conclude that although the auction was

defective, the transfer of the title to Sandra Rosario was still

effective.

While police officers are expected to know the law, and

especially the criminal code,[15] it would be unreasonable to

expect officers to analyze a section of the Uniform Commercial

Code (as reflected in the PennDOT fact sheet) and draw the

correct inferences about the impact of that Code on that their

case.

Plaintiffs argue that defendants could have contacted

PennDOT, as Adrian Sanchez did, to explore potential issues with

the auction in greater detail.  They note that in the case

*Walker,* 1998 U.S.Dist.LEXIS 8428, at *8, the court permitted the

question of failure to investigate to go to a jury when a police

officer charged an inmate with a crime that was committed while

the inmate was in custody.  The District Court noted that the

evidence of probable cause was weak, and that the officer could

_____

[14]     In fact, even the letter from Ms. Eckman's lawyer, Samuel Mecum,
to City Self Storage does not suggest that the car was not titled to Ms.
Rosario.  Instead, it recommends that the storage company work with Ms.
Rosario to get her to title the car back to Ms. Eckman.

[15]     See *Lischner v. Upper Darby Twp.*, 2007 U.S.Dist.LEXIS 7913, at
*12-13, 35 (E.D.Pa. Feb. 5, 2007)(Pratter, J.), where the Court concluded that
a police officer working at a presidential appearance should know both the
elements of the crime of defiant trespass, and the affirmative defense
included within the statute.

have investigated the inmate's alibi with "only a telephone call or computer check." *Id* at *19-20.

In the within case, by contrast, officers did make a simple computer check into the case when they ran the car's vehicle identification number through a PennDOT database and discovered that the car had been titled to Sandra Rosario. Moreover, the probable cause evidence against Adrian Sanchez, consisting of a positive identification by his sister and an apparent confirmation from PennDOT that he had driven off in a car titled to Sandra Rosario, was strong.

Plaintiffs suggest that the police should have assumed that PennDOT was incorrect in labeling Ms. Rosario the owner of the car, and investigated the quality of the auction of the car further. However, I cannot conclude that the officers' failure to follow this course of action shocks the conscience. Therefore, I grant defendants' motion for summary judgment and dismiss Adrian Sanchez's failure-to-investigate claim.

### The Arrests of Ivy Jo Eckman

Next I examine the existence of probable cause for the arrest of plaintiff Ivy Jo Eckman. Initially, I grant the motion for summary judgment by defendants Detective James Fatta and Officer Joseph Graczyk and dismiss Ms. Eckman's claims against them for false arrest and malicious prosecution.

It was defendant Sergeant Damon Greathouse who applied for the warrant for arrest of Ivy Jo Eckman in May 2005, and who renewed the charges against her once she reneged on her agreement to lead officers to the disputed car in July 2005. Although defendants Fatta and Graczyk participated in the investigation into Ms. Eckman's case, with Detective Fatta taking Ms. Eckman's statement following her arrest, there is nothing in the record to indicate that they either caused Ivy Jo Eckman's arrest or initiated criminal proceedings against her.

For the same reasons discussed regarding the case of plaintiff Althea Sanchez — namely, that these defendants lacked the requisite personal involvement required for liability–Officer Graczyk and Detective Fatta are dismissed from the case.

Viewing the facts in the light most favorable to Plaintiffs, I conclude that a reasonable jury could find that although there may have been probable cause to arrest Ivy Jo Eckman in May 2005, that probable cause had dissipated by July 2005. The affidavit of probable cause submitted by Sergeant Greathouse in May 2005 must be evaluated in the context of any omitted material which a reasonable person would know that a judge would wish to know. Pursuant to the case cited above, I must also eliminate from consideration any material the accuracy of which Sergeant Greathouse would have had reason to doubt.

Viewing the evidence in the light most favorable to the plaintiffs, as I am required to do, I conclude that a reasonable person would realize that a neutral magistrate would wish to know that an uninterested third party had corroborated the Sanchez family and Eckman version of events. Accordingly, the affidavit should have included the information that Sergeant Greathouse spoke to an employee at Citifinancial following the arrest of Adrian Sanchez, and learned that the bank had never been informed of any sale of the car.

I must also excise from the warrant the statement that Ivy Jo Eckman "forfeited rights and ownership of the vehicle" by failing to pay her rent at the storage facility. At the time that Sergeant Greathouse prepared the arrest warrant, he had contact with Adrian Sanchez, who disputed that the vehicle was properly auctioned. Sergeant Greathouse was also aware that the family sought to reclaim the car. Under the circumstances, a jury could conclude that the statement that plaintiff Eckman "forfeited" her claim to the car was false.

The corrected affidavit of probable cause from May 2005 would now read:

> 1. Officer Joseph Graczyk responded to a stolen vehicle complaint at City Self Storage on April 25, 2005. The vehicle was sold to Sandra Rosario at auction, and was titled to, and insured by, Ms. Rosario.
>
> 2. Adrian Sanchez was arrested on May 7, 2005 and given <u>Miranda</u> warnings. He stated that

37

"he drove the vehicle off of the parking lot for def[endant], who was present at time of theft." Sergeant Damon Greathouse and Adrian Sanchez spoke on a number of occasions.  Mr. Sanchez maintains that the car was improperly sold at auction, and that he was not aware when he drove the car away that it had been titled to Sandra Rosario.  Mr. Sanchez contacted PennDOT, and reported that staff members there agree that the auction was defective.

3.  Ivy Jo Eckman "has been contacted through third parties" and advised to remit the car to the police.  She has failed to comply and "give the car back to the victim."

4.  The auction of the car appears to have been defective under PennDOT regulations because advertisements for the auction did not describe the vehicle and were too close in time to the sale.

5.  Patrick Sanchez produced a Western Union receipt confirming that Ms. Eckman made a substantial payment on the car between April 25, 2005 and May 7, 2005.

6.  Officers spoke to representatives of Citifinancial, who confirmed that they were not informed about the auction of the car by City Self Storage.

7.  Philomena Sanchez had shown the police a copy of a title listing Ivy Eckman as the owner of the car, and Transouth Financial as the lienholder.

Even thus adjusted, the May 14, 2005 affidavit supports a finding of probable cause that Ivy Jo Eckman committed the crime of theft.  The officers were not required to integrate the implications of the defective auction into their investigation of the crime.  The fact that Citifinancial was surprised to learn that the car had been sold out from under Ms. Eckman does not

inevitably lead to the conclusion that Ms. Eckman still owned the car. Officers were permitted to weigh Adrian Sanchez's statements against Sandra Rosario's, even if their judgments ultimately proved to be wrong.

The car was still titled to Ms. Rosario, who reported that it had been taken by a man identified as Adrian Sanchez. The title presented to police by Philomena Sanchez conflicted with the PennDOT title history, but police could reasonably choose to rely on PennDOT's assertion that Ms. Rosario was the owner of the car. As of May 14, 2005, Sergeant Greathouse could reasonably infer that Ms. Eckman had committed theft or receipt of stolen goods by asking Adrian Sanchez to remove the car from City Self Storage.

However, I cannot conclude that as a matter of law, probable cause still existed at the time of Ivy Jo Eckman's second arrest in July 2005. By May 20, 2005, well in advance of the second arrest, Sergeant Greathouse had additional e-mail correspondence with Citifinancial employee Perry Mascerenas. Mr. Masceranas confirmed that the bank had settled its account with Ivy Jo Eckman and mailed the car's title to her.

With that e-mail, an impartial bank confirmed that Ms. Eckman had a reasonable belief that she was the true owner of the car. Most importantly, the bank confirmed that the title held by Ms. Eckman and shown to police by Philomena Sanchez had been

released recently, dispelling doubt that Ms. Sanchez may have shown police an antiquated version of the title.

All of these facts would be of obvious interest to a neutral magistrate charged with evaluating an affidavit of probable cause, but Sergeant Greathouse testified that he did not discuss the Eckman and Sanchez family's theory of the case with the Assistant District Attorney who authorized refiling of the charges against Ivy Eckman in July 2005. The omitted facts are also material because with this evidence added to the equation, I cannot conclude as a matter of law that Sergeant Greathouse had probable cause to believe that Ivy Jo Eckman had committed the crimes charged in July 2005. Therefore, I deny the motion for summary judgment of defendant Sergeant Damon Greathouse concerning Ivy Joe Eckman's false arrest claim against him, which must go to a jury.

Malicious Prosecution, Willful Misconduct and Punitive Damages

Under Pennsylvania law, a claim for malicious prosecution must include a showing that (1) defendant initiated a criminal proceeding against plaintiff, (2) the criminal proceeding was resolved in plaintiff's favor, (3) the proceeding was initiated without probable cause, and (4) defendant acted with malice or for a purpose other than the pursuit of justice. *Collins v. Christie*, 337 Fed. Appx 188, 194 (3d Cir. 2009) (internal citations omitted). Under federal law, the standard is

40

substantially similar.  Plaintiff must also show that he or she

suffered a deprivation of liberty consistent with the concept of

a seizure.  *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir.

2009).

From the absence of probable cause, a factfinder may

infer that an arrest was motivated by malice.  *Lippay v.

Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993).  Whether or not

there was probable cause for the arrest is a dispute concerning a

material issue of fact.  Therefore, summary judgment is

inappropriate because probable cause must be resolved by a jury.

Accordingly, I deny defendants' motion for summary judgment on

the malicious prosecution claims of plaintiff Ivy Joe Eckman.

This material factual dispute also deprives defendant

of immunity under the Pennsylvania Political Subdivisions Tort

Claims Act, which shields officials from liability for actions

other than those involving "actual malice or willful misconduct."

42 Pa.C.S.A. § 8550.  False arrest and malicious prosecution are

intentional torts, and malice is a key, unresolved element in

plaintiffs' claims.  The remaining defendant is thus not eligible

for immunity under state law.  *Bristow v. Clevenger*,

80 F.Supp.2d 421, 432 (M.D.Pa. 2000).

Similarly, the Court cannot dispose of plaintiffs'

claim for punitive damages.  Punitive damages are available in

Section 1983 cases only when a state actor is reckless, callous,

or malicious. 42 U.S.C. § 1983; *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006). Just as a jury must still pass on the question of malice, so it must determine whether punitive damages could be available in this case. Therefore, I deny the motion for summary judgment of defendant Sergeant Damon Greathouse concerning Ivy Jo Eckman's malicious prosecution claim against him, which must go to a jury.

### Claim of Ivy Jo Eckman for Failure to Investigate

Although I leave the issue of probable cause concerning malice and punitive damages to the jury, I grant the motion for summary judgment of defendant Sergeant Greathouse concerning the claim of plaintiff Ivy Jo Eckman against him for failure to investigate, and I dismiss that claim from Count III of the Civil Action Complaint.

The record reflects that Sergeant Greathouse did continue to investigate Ms. Eckman's case, even after her first arrest. For example, Sergeant Greathouse corresponded with representatives of Citifinancial, in an apparent effort to investigate the appropriateness of the auction of the car by City Self Storage.

As noted in the discussion of plaintiff Adrian Sanchez's claim, plaintiffs' dispute here is not with the defendants' investigation, but rather with the conclusions defendants reached from that investigation. While those

conclusions will be determined by a jury, the investigation
itself does not shock the conscience and therefore generate a
separate constitutional claim.

## Qualified Immunity

Defendant Sergeant Damon Greathouse asserts the defense
of qualified immunity. Because a violation of plaintiff Ivy Jo
Eckamn's constitutional rights may have taken place when she was
arrested a second time, I must consider whether that right was
clearly established at the time of the alleged violation. *Berg*,
219 F.3d at 272. The right to be free from unreasonable search
and seizure, and the requirement that a warrant be issued with
probable cause, are grounded in the text of the Fourth Amendment
and thus clearly established. *Orsatti v. New Jersey State
Police*, 71 F.3d 480, 483 (3d Cir. 1995).

In the context of this action, then, the only remaining
question is whether a reasonable officer possessed of defendant's
knowledge of the case would have believed that the arrests of
Ivy Jo Eckman were lawful. *Davis v. Darby Borough*,
669 F.Supp.2d 532, 536 (E.D.Pa. 2009) (Brody, J.).

Qualified immunity shields officers who reasonably but
mistakenly conclude that probable cause to arrest exists. *Hunter
v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v.
Creighton*, 483 U.S. 635, 641 (1987))*.* Defendant's conduct is
thus protected by qualified immunity if he reasonably believed

the information available to him gave rise to a "reasonable inference [of plaintiff's criminality]; it need not be the only, or even most likely inference...." *Smith*, 979 A.2d at 917.

Although qualified immunity is usually a question of law for the court to decide, in this case a jury must still weigh the factual allegations to decide exactly what Sergeant Greathouse knew when he arrested Ivy Jo Eckman in July 2005. Viewing the facts in the light most favorable to plaintiffs, I find that a reasonable jury could conclude that at the time of Ms. Eckman's second arrest, Sergeant Greathouse had an extensive dialogue with plaintiff Adrian Sanchez about the flaws in the auction process of City Self Storage, had received a copy of PennDOT's regulations indicating that the auction was most likely flawed, and had become aware that Ivy Jo Eckman had retained a lawyer to reacquire the car from City Self Storage.

Based upon the evidence presented, a jury could conclude that prior to the second arrest of plaintiff Ivy Jo Eckman, Sergeant Greathouse had both seen a copy of the car title identifying her as the owner and communicated with a bank official who confirmed that the lender had recently settled its account with Ms. Eckman and remitted the title to her.

Because I conclude that, depending on the jury's evaluation of the evidence, it could conclude that Sergeant Greathouse could not have reasonably believed that he had

44

probable cause to arrest Ms. Eckman a second time, I deny defendant Greathouse's motion for summary judgment in the nature of a request for qualified immunity with leave to renew at trial.[16]

## CONCLUSION

For all the foregoing reasons, I deny summary judgment concerning plaintiff Ivy Jo Eckman's claims against defendant Sergeant Damon Greathouse stemming from her July 2005 arrest for false arrest, malicious prosecution, and punitive damages. I grant summary judgment, and dismiss, all other claims of plaintiffs.

---

[16] Conversely, if I had concluded that probable cause for the arrest of Adrian Sanchez and the first arrest of Ivy Eckman did <u>not</u> exist, I would have found that the police officers were entitled to qualified immunity. Before Sergeant Greathouse's May 20, 2005 correspondence with bank officials confirming the currency of the title provided by Philomena Sanchez, the police could reasonably rely on PennDOT's judgment that Sandra Rosario owned the car when deciding whether to charge Mr. Sanchez and Ms. Eckman. However, this reliance would be less reasonable once it became clear that two titles, supplied and verified by impartial sources, were available for the car.